**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

Plaintiff,

v.

HOMERO ORTEGA,

Defendant.

Case No. 22-20002-07-DDC

**MEMORANDUM AND ORDER**

This matter comes before the court on Defendant Homero Ortega's Motion for Reconsideration of Bond Determination. (ECF 162.) The motion asks the court to reopen Ortega's detention hearing. Because the motion is based in part on purportedly new evidence that was not presented at Ortega's prior detention hearing, the district judge referred it to the undersigned magistrate judge. (ECF 165.) For the reasons more fully explained below, the court denies the motion because, although Ortega has presented some new information that arguably was not known to him at the time of the detention hearing, that information does not have a material bearing on the court's determination that it cannot fashion conditions of release that would reasonably assure Ortega's appearance and the safety of the community.

## I. Background

On January 5, 2022, a grand jury indicted the seven co-defendants in this case with Conspiracy to Distribute and Possess with Intent to Distribute (50 grams or more of) Methamphetamine, with the alleged conspiracy spanning from on or about November 1, 2018, to on or about May 17, 2021. The indictment also charges the various defendants with (Count 2) Conspiracy to Launder Drug Proceeds and (Counts 3-31) Use of a Telephone to Facilitate Drug

Trafficking. Defendant Ortega is charged in Count 1 with the main conspiracy charge, and in Counts 17, 19, 21, 25, and 31 with using a telephone to facilitate drug trafficking on or about August 17, 19, 23, and 28, and September 2, 2020, respectively. (ECF 1.) He is facing 10 years to life imprisonment on Count 1, and up to 4 years on Counts 17, 19, 21, 25, and 31.

At Ortega's initial appearance on January 24, 2022, he waived his right to a detention hearing and on that basis the court ordered him detained. (ECF 28-30.) At the time, he did not yet have a release plan and he had outstanding warrants for traffic violations.

On February 1, he filed a motion asking the court to reconsider bond because his twin brother Cirilo Ortega, who lives in Kansas City, Kansas, had lined up a place for him to stay and a job for him, and Homero Ortega had cleared up his outstanding warrants. (ECF 46.) The government's response to the motion pointed out that the charges against Ortega mean that he is subject to the rebuttable presumption set forth in 18 U.S.C. § 3142(e)(3)(A). (ECF 50.) The government further argued that it would prove by a preponderance of the evidence that he is a flight risk and by clear and convincing evidence that he is a danger to the community. Turning to the § 3142(g) factors, the government explained that Ortega engaged in drug-trafficking activities directly with the leader of a Kansas City methamphetamine drug-trafficking cell, Romel Alvarado-Calderon, who is the lead defendant in a related case (D. Kan. Case No. 21-20008-01); that the evidence against Ortega is strong based on several recorded communications; that he is not amenable to supervision in part because he provided untruthful and conflicting information to pretrial services—*e.g.*, that he had no substance abuse history when in fact he is a methamphetamine user, that there were no firearms at his girlfriend Wendy Ramirez's house (where he at one point proposed to live) when in fact law enforcement officers seized a firearm from there, that he had last traveled to Mexico in 1993 to visit his grandparents when in fact he

had two documented entries in 2019; that he has significant ties to Mexico in that he attended school there, lived near the border for several years, and most of his family lives there; that he was not employed; and that his threat of continued drug trafficking presents a serious danger to the community, particularly given his practice of exchanging methamphetamine for sexual favors and a 2015 incident where he tried to enter the country with 1.19 kilograms of cocaine. (*Id.*)

On February 4, the court held a detention hearing. The government called as a witness the case agent, Jose Covarrubius with Homeland Security Investigations. (ECF 117, at 9.) Agent Covarrubius testified that, during several wiretaps in this matter, agents intercepted Ortega in direct discussions with Alvarado-Calderon, only some of which were charged in this case. (*Id.* at 11-13.) Proffers by cooperating individuals indicated that Ortega was also involved in kilogram-quantity or greater transactions with Alvarado-Calderon, although the kilogram-quantity transactions were not supported by wiretap evidence. (*Id.* at 21.) Two other individuals proffered that Ortega would give females methamphetamine in exchange for sexual favors and that he used his girlfriend, Wendy Ramirez, to pick up drugs from his source of supply. (*Id.* at 11-13.)

Contrary to Ortega's report to Pretrial Services that he last visited Mexico in 1993, Agent Covarrubius testified that Ortega had two entries in early January 2019 in Hidalgo and Laredo, Texas. (*Id.* at 13-14.) Ortega was also stopped at the border in June of 2015 in Brownsville, Texas, as the passenger in a vehicle that had 1.19 kilos of cocaine in the center console. (*Id.* at 14-15.) The driver was charged, but Ortega was not; however, he admitted to being a drug user including cocaine and to sometimes consuming drugs with females. (*Id.*) On cross-examination, defense counsel pursued a theory that the individual at the border in 2015 was not Ortega because he had been the victim of identity theft. (*Id.* at 17-18.) However, Agent Covarrubius testified on re-direct

that the individual who was stopped at the border in 2015 provided Ortega's correct date and city of birth, and said the driver was a childhood friend he grew up with. (*Id.* at 24-25.)

Ortega was arrested in this case at Ramirez's residence. When he was arrested, he yelled at her not to consent to a search. (*Id.* at 16-17.) Law enforcement officers subsequently obtained a search warrant and found a firearm at the residence. (*Id.*)

At the conclusion of the hearing, The Honorable James P. O'Hara granted the motion to the extent Ortega sought to reopen detention but denied the motion to the extent Ortega sought release. (*Id.* at 31-32.) The court found by a preponderance of the evidence that Ortega's release would pose a serious flight risk because, although he "has very little in the way of significant criminal history, this federal charge is quite a different matter." (*Id.* at 32.) The court explained as follows:

> With all five of defendant's children and three of his siblings being outside of the Kansas City area, the easiest thing for this defendant to do would be to cross the border and evade prosecution. If the defendant were to leave this country for Mexico, the chances of the United States getting him back here through extradition are zero.

(*Id.*) The court also expressed that it was "even more concerned about the danger to the community that defendant's release would pose" because of the wiretap evidence tying him to the cell head, cooperating witnesses who suggest he was involved in multiple quantity transactions, that he is a methamphetamine user and large-scale drug trafficker, that he possessed a firearm that he lied about when arresting agents confronted him at his residence, and that he poses a danger to others in that he exploits vulnerable, drug-addicted women by trading drugs for sexual favors. (*Id.* at 32-33.) Moreover, he "enjoys, at best, a casual relationship with truthfulness," which is a "huge problem" because the court has "no confidence that Mr. Ortega would be truthful with any pretrial officer" and that makes him not amenable to supervision. (*Id.*) And, although the court found that

Ortega had rebutted the rebuttable presumption based on his lack of criminal history, that presumption nevertheless remained a factor among all others to be considered. (*Id.*)

The court memorialized its findings in a written detention order. (ECF 53.) In addition to the above, the court found that the government has a strong case against Ortega, including witness proffers, intercepts of phone conversations and other electronic surveillance, and physical surveillance. The court also considered Ortega's history and characteristics, including that he is unemployed, lacks a stable employment history, and does not have significant community ties in the Kansas City area. The court noted the discrepancies between Ortega originally telling Pretrial Services that he last traveled to Mexico in 1993, when in fact he had traveled there twice in 2019 and was a passenger in a car that was stopped at the border in 2015, which resulted in the driver being arrested for possessing more than a kilogram of cocaine. Finally, the court noted that when Ortega was arrested on January 19, "he stated no firearm was present," but a "search pursuant to a warrant later disproved that statement." (*Id.* at 2.) Furthermore, his proposed release plan—which involved living with a custodian who had not been confirmed to be a U.S. citizen and working for an employer with a felony record—was insufficient.

Ortega has now filed the current motion asking the court to reconsider its prior detention order and reopen his detention hearing. (ECF 162.) He argues that, although the government alleges he was involved in kilogram-quantity transactions, there is no evidence that he was engaged in large-scale drug trafficking because the recorded calls relate only to ounce or multi-ounce purchases – never kilograms. In particular, he points out that two guilty pleas entered in the *Alvarado-Calderon* case since the February 4 detention hearing do not mention Ortega. The motion also claims that Judge O'Hara incorrectly found that Ortega posed a risk of "armed drug trafficking" because there was no evidence that he possessed a firearm. He points out that the

firearm was found during defendant's arrest while he was at Ramirez's residence and that Ramirez has now presented an affidavit dated August 16 that the gun—a pink Walther .22 caliber pistol—was hers and Ortega was unaware that it was in her home. He further contends that the 2015 border stop did not implicate him in drug trafficking and that he did not "exploit vulnerable drug-addicted women by trading drugs for sexual favors," but rather that he was simply involved in a significant "party scene" where people did drugs and had sex, but that he did not "prey on anyone." (*Id.* at 7.) Lastly, his motion seeks placement in a halfway house and he contends that his request to be placed in a halfway house should "address[] any concerns about his family connection to Laredo, Texas." (*Id.*) However, he later filed a supplement to his motion in which he explains that he no longer seeks placement at a halfway house, but instead agrees to be fitted and monitored with an ankle bracelet. (ECF 164.)

## II. Legal Analysis

Because Ortega's motion relies on purportedly new information, the court construes Ortega's motion as a motion to reopen the detention hearing under § 3142(f)(2). Under that statute, the court may reopen a detention hearing at any time before trial if the court finds that: (1) "information exists that was not known to the movant at the time of the hearing" and (2) that information "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person in the community." *Id.*; *see also United States v. Dermen,* 800 F. App'x 665, 668 (10th Cir. 2020) (reciting the legal standard). Reconsideration is permissible "only when there is new information that would materially influence the judgment about whether there are conditions of release that will reasonably assure that the defendant will not flee and will not harm any other person or the community." *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003). Information that was

known by the defendant cannot be the basis for reopening the issue of detention. *See United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

At the first prong of the analysis, the court finds that Ortega's motion arguably presents new information that was not known to him at the time of the February 4 detention hearing. First, he relies on Ramirez's affidavit that when Ortega was arrested at her rental home, he was unaware that there was a firearm (a pink pistol) in the home. (ECF 162-2.) But the fact that *Ramirez says* that Ortega was unaware of the firearm does not qualify as information that was not known to Ortega at the time of the February 4 detention hearing. Ortega himself would have known his own state of mind as to this fact at the time of his arrest and could have presented evidence or a proffer that he was unaware of the firearm at Ramirez's residence. Indeed, he would have had uniquely personal knowledge about his own state of mind whereas Ramirez would not have any personal knowledge of this fact. So the court gives little weight to *Ramirez's* statement that Ortega was "unaware" that the gun was present. That said, the fact that the pistol was pink does support Ortega's contention that the firearm was not his and that he was unaware that it was at the residence. Second, Ortega points out that two guilty pleas have been entered in the *Alvarado-Calderon* case since the detention hearing in February of 2022, and neither of those guilty pleas mention or refer to him.

The other factors Ortega identifies as being "incorrect" do not constitute new information. (ECF 162, at 6-7.) First, Ortega argues "[t]he 2015 border stop does not implicate [him] in drug trafficking" because he was an unknowing passenger that the driver did not implicate. (*Id.* at 6.) But the court already considered Ortega's passenger status (*see* ECF 162-1, at 14-15, 24) and did not conclude that the stop implicated Ortega in drug trafficking. Second, Ortega challenges the

court's conclusion that he exploited drug-addicted women by trading methamphetamine for sex. He asserts that two co-defendants have given the government statements indicating that he asked women to have sex (presumably, meaning not in exchange for drugs). But these statements do not refute the case agent's testimony at the hearing that multiple women indicated in proffer interviews that Ortega exchanged methamphetamine for sex. (*Id.* at 11-13.)

In sum, Ortega has identified new information that, at best, may undermine the court's finding that he poses a serious risk of "armed drug trafficking" and that he was involved in "multiple-kilogram sales of methamphetamine."

But, at the second prong of the analysis, this does not have "a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person in the community." § 3142(f)(2). As set forth in detail above, the court relied on a multitude of reasons in determining that Ortega poses a serious flight risk and danger to the community that cannot be overcome by conditions placed on his release. Even if the court were to adjust its prior weighing of the § 3142(g) factors to account for Ortega's only criminal activity being that with which he is charged—namely, conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine and the smaller-quantity drug transactions caught on wiretap (as opposed to being a multi-kilogram supplier with a firearm)—detention would still be warranted for all of the other reasons articulated by Judge O'Hara. In short, detention was not even a close call here.

To recap some of the main reasons, Ortega is facing a substantial period of incarceration—a statutory minimum of 10 years for which the government's experienced prosecutor is predicting a guideline range of 235-293 months' imprisonment. Furthermore, the evidence against him is very strong. He is unemployed and does not have a stable employment history. Meanwhile, he

was deeply mired in the methamphetamine distribution industry—dealing directly with the leader of a Kansas City methamphetamine drug-trafficking cell, trading drugs for sexual favors, and obviously supporting himself financially through drug distribution activities and through his girlfriend Ramirez, who the record suggests was also involved in drug distribution activities. The only job he has proposed is not suitable because the owner has a felony record. He does not have significant community ties to Kansas City and does not have a viable release plan here. He would prefer to live with his twin brother, Cirilo Ortega, but Pretrial Services vetted this same release plan before the detention hearing in February of 2022 and determined it was not viable because Cirilo lives in a one-bedroom apartment with several other family members. Meanwhile, Homero Ortega has significant ties to Laredo, Texas, and Mexico. All of this gives him every incentive to flee to evade prosecution, as Judge O'Hara aptly recognized. Further, Ortega was untruthful in his interview with Pretrial Services in material respects—both about his border crossings to Mexico and about his substance abuse history—which makes him not amenable to pretrial supervision. And the rebuttable presumption in § 3142(e)(3) has been rebutted only by Ortega's lack of a significant criminal history; however, it remains a factor for the court to consider, among all others.

In the end, nothing raised in Ortega's motion alters the court's prior conclusion that the court cannot fashion any condition or combination of conditions of release that would reasonably assure that he will appear as required in this action and not present a risk of harm to others via ongoing drug distribution activities. In making this determination, the court has considered Ortega's suggestion that the court place him on location monitoring. However, this would not serve as an adequate deterrent against the risks that would be posed by Ortega's release. For one, he has already been conducting his drug distribution activities using a telephone, and location

monitoring would do nothing to curb that behavior. Furthermore, he can remove his location monitoring device should he choose to flee, and there is a serious risk that he would do so.

**IT IS THEREFORE ORDERED** that Ortega's Motion for Reconsideration of Bond Determination (ECF 162) is denied.

Dated January 19, 2023, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge